**IN THE UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| Allstate Insurance Company, | |
|              Plaintiff, | Case No. 1:23-cv-01142 |
|    v. | |
| Dennis McDaniel, Cody Cornoyer, and Hills Insurance Group, | **JURY TRIAL DEMANDED** |
|              Defendants. | |

<u>**VERIFIED COMPLAINT**</u>

Plaintiff Allstate Insurance Company ("Allstate" or "Plaintiff"), by and through its undersigned attorneys, alleges as follows for its Verified Complaint against Defendants Dennis McDaniel ("McDaniel"), Cody Cornoyer ("Cornoyer"), and Hills Insurance Group ("HIG") (collectively, "Defendants"):

<u>**NATURE OF THE ACTION**</u>

1.     This action is the result of Defendants Cornoyer and McDaniel failing to comply with certain promises they made and obligations they owe Allstate.

2.     Specifically, Defendant Cornoyer executed the Allstate Confidentiality and Non-Competition Agreement ("LSP Agreement") with Allstate and Allstate Executive Agent Wyatt Mace ("EA Mace") on September 2, 2021. The LSP Agreement is attached as **Exhibit A**. The Agreement allowed Cornoyer to sell, and receive monies from the sale of, Allstate products and services (jointly, "products").

3.     Similarly, Defendant McDaniel executed a Registered Representative Agreement ("RR Agreement") with Allstate Financial Services, LLC ("AFS") on July 12, 2005. The RR Agreement is attached as **Exhibit B**. The Agreement allowed McDaniel to, among other things, receive Confidential Information (defined below) of AFS and Allstate.

1

4.      Under both Agreements, Cornoyer and McDaniel agreed to not solicit, for one year after their Agreements terminated, Allstate customers that (a) they learned about as a result of their work for EA Mace, AFS, and/or from Allstate confidential information received while working for Allstate; and (b) were Allstate customers at the time their Agreements terminated.

5.      The Agreements further required Cornoyer and McDaniel to acknowledge that they would be granted access to Allstate and AFS confidential information, that Allstate and AFS confidential information is the property of Allstate, and that they would not disclose to any third party or permit any third party to access Allstate confidential information. Cornoyer and McDaniel also agreed to return all Allstate property, including Allstate confidential information, upon the termination of their relationships with Allstate and AFS.

6.      On February 24, 2023, both Cornoyer and McDaniel terminated their relationships with Allstate and AFS.

7.      Although their relationships with Allstate and AFS ended, Cornoyer and McDaniel are working together at Defendant Hills Insurance Group in Farmington, New Mexico.  Since that date, Cornoyer and McDaniel have been selling products that compete with Allstate and soliciting Allstate customers to leave Allstate.

8.      Specifically, Defendants Cornoyer, McDaniel, and HIG are soliciting Allstate customers by, among other things, (a) calling the customers and telling the customers that they are the customers' "new Allstate Agent"; (b) soliciting Allstate customers at their homes; (c) sending transfer paperwork to EA Mace and other Allstate Agents that falsely claims the customer has cancelled their Allstate policy; and (d) sending targeted mailing solicitations to Allstate customers.  Given the large amount of solicitations, Cornoyer and/or McDaniel likely

23354109 v2

exported/printed multiple Allstate customer lists before terminating their relationship with Allstate.

9.    Defendants' actions are a clear violation of Cornoyer's and McDaniel's Agreements and common law.  Consequently, Allstate now brings suit against Cornoyer, McDaniel, and HIC for breaches of the Agreement, misappropriation of trade secrets, tortious interference, and writ of replevin.

10.    In doing so, Allstate requests that this Court enter an order enjoining Defendants Cornoyer and McDaniel from continuing their knowing and intentional breach of their Agreements, and award Allstate compensatory and punitive damages for Defendants' intentional and illegal acts.  Allstate also requests that the Court award Allstate its attorneys' fees pursuant to the terms of the Agreements and the law.

11.    More specifically, Allstate requests that this Court enter an order: (1) enjoining Cornoyer and McDaniel, and anyone acting in concert with them, from soliciting Allstate customers; (2) restraining and enjoining Cornoyer and McDaniel, and anyone acting in concert with them, from soliciting the purchase of products competitive to those offered by Allstate; (3) compelling Cornoyer and McDaniel to return to Allstate all Allstate property, including all Allstate and AFS confidential information (collectively, "Confidential Information" or "Allstate Confidential Information"), in their custody, possession or control; (4) restraining and enjoining Cornoyer and McDaniel, and anyone acting in concert with them, from using, possessing, or accessing Confidential Information; (5) awarding Allstate compensatory and punitive damages for Defendants' intentional and illegal acts; and (6) awarding Allstate its reasonable attorneys' fees as provided for under the Agreements and applicable law.

## THE PARTIES AND RELEVANT PERSONS

12.    Plaintiff Allstate Insurance Company ("Allstate") is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

13.    Allstate Financial Services, LLC ("AFS") is a limited liability company organized under the laws of the state of Delaware. Its principal place of business is located in Lincoln, Nebraska. AFS's sole member is Allstate Insurance Company.  Accordingly, AFS is a citizen of Delaware and Illinois.

14.    Defendant Dennis McDaniel ("McDaniel") is a citizen of the State of New Mexico and, based upon information and belief, resides at 7100 Dellwood Court, Farmington, NM 87402.

15.    Defendant Cody Cornoyer ("Cornoyer") is a citizen of the State of New Mexico and, based upon information and belief, resides at 1607 E 31st Street, Farmington, NM 87401-2001.

16.    Hills Insurance Group ("HIG") is a New Mexico-based insurance provider. HIG is an Allstate competitor.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Allstate's claims against the Defendants under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* raise a Federal question.  Allstate's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

18.    Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

23354109 v2

19.     This Court has personal jurisdiction over McDaniel and Cornoyer because they are citizens and residents of New Mexico. Venue is proper in the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1391(b) because McDaniel and Cornoyer reside in this District, a substantial part of the events giving rise to Allstate's claims occurred in this District, and the Allstate property that Allstate seeks to be returned is located in this District.

## BACKGROUND

### Allstate's Business and Hiring of Independent Agents

20.     Allstate is one of the nation's leading providers of insurance products to individuals and businesses. Among other things, Allstate provides automobile, property, and casualty insurance to individuals and businesses.

21.     In addition to providing these products directly, Allstate appoints independent exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate products.

22.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

23.     Exclusive Agents hire employees to assist them with the selling of Allstate products. These employees, known as Licensed Service Providers ("LSPs"), are only permitted access to Allstate confidential information and allowed to sell Allstate products after they sign an agreement with Allstate and the Exclusive Agent stating that the LSP will, among other things, (a) keep Allstate Confidential Information confidential and (b) agree to certain post-employment restrictive covenants. Neither the Exclusive Agents, nor the LSPs, have access to Allstate

Confidential Information or Allstate customers until they sign their respective agreements with Allstate.

24.    Allstate expends substantial resources advertising, marketing and promoting its products.  The Exclusive Agents and LSPs benefit, directly and indirectly, from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the Exclusive Agents and LSPs to develop and cultivate customer accounts and relationships on behalf of Allstate.

25.    Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success.

### AFS's Business and Hiring of Independent Agents and Service Providers

26.    AFS is one of the nation's leading providers of financial products and services to individuals and businesses. AFS provides securities, mutual funds, and annuities, among other products.

27.    In addition to providing these products directly, AFS appoints Registered Representatives ("RRs") to sell AFS products.

28.    AFS rigorously screens its RRs to ensure that the representatives are qualified to represent and sell AFS products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate financial solutions.

29.    AFS expends substantial resources advertising, marketing, and promoting its products.

30.    The RRs benefit directly and indirectly from AFS's advertising, marketing, and promotional efforts, as well as from AFS's goodwill, reputation, and name recognition. These

6

efforts and expenditures allow the RRs to develop and cultivate customer accounts and relationships on behalf of AFS.

### Relationship Between Allstate And AFS

31.    Allstate and AFS are affiliated companies. Thus, and in order to assist RRs in selling AFS products, a RR is paired with one or more Exclusive Agents who sell Allstate products.

32.    By pairing the RR with multiple Exclusive Agents, the RR is able to sell registered products to Allstate automotive, property and casualty insurance customers.

33.    In other words, through Allstate and the Exclusive Agents, an RR is introduced to Allstate customers for the purpose of selling AFS registered products to Allstate customers. An RR would not have access to the Allstate customer, or Allstate Confidential Information, but for being affiliated with AFS and having Allstate and/or the Exclusive Agent introduce the customer to the RR.

34.    Naturally then, a RR may have access to a LSP through the RR's relationship with the Exclusive Agent.

### Allstate's and AFS' Protection of Confidential Information

35.    Allstate and its customers entrust the Exclusive Agents and LSPs to safeguard and protect Confidential Information, which includes information relating to, among other things, a customer's personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

36.    Allstate protects its information (described in paragraph 35) by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and LSP

7

who needs this information to sell Allstate products; educating the Exclusive Agent and LSP about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring the Exclusive Agent and LSP to execute written agreements that protect against the misuse and improper disclosure of Allstate Confidential Information.

37.     Consequently, all Exclusive Agents and LSPs, pursuant to their agreements with Allstate and while performing services under their agreements, acknowledge that they will have access to Allstate Confidential Information, promise to not disclose Allstate Confidential Information to anyone not authorized to receive it, and confirm that they will not use Allstate Confidential Information for their own benefit or for any improper purpose.

38.     Similarly, RRs, pursuant to their agreements with AFS and while performing services under their agreements, acknowledge that they will have access to Allstate Confidential Information, promise to not disclose Allstate Confidential Information to anyone not authorized to receive it, and confirm that they will not use Allstate Confidential Information for their own benefit or for any improper purpose.

39.     RRs, Exclusive Agents and LSPs agree, upon termination of their relationships with Allstate and/or AFS, to continue treating Confidential Information as confidential, not disclose (either directly or indirectly) Confidential Information to any third party, and immediately return all Confidential Information to Allstate and/or AFS.

40.     Hence, Allstate's Confidential Information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive

insurance business.  Not surprisingly then, RRs, Exclusive Agents and LSPs do not have access to Confidential Information before becoming affiliated with Allstate or AFS, and only have access to Confidential Information because of their affiliation with Allstate or AFS and their promises to keep Confidential Information confidential.

**Cornoyer Enters into the LSP Agreement to Solicit and Sell Allstate Products**

41.     Cornoyer was hired by EA Wyatt Mace on or about September 2, 2021 to sell Allstate products from EA Mace's Allstate Agency.

42.     Before Cornoyer could sell Allstate products, Cornoyer had to sign, and did in fact sign Allstate's Confidentiality and Non-Competition Agreement (the "LSP Agreement").  (*See* LSP Agreement at **Exhibit A**.)

43.     Under the Agreement, Cornoyer acknowledged that the following information is Allstate "Confidential Information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.  All such Confidential Information is wholly owned by [Allstate].  Such Confidential Information may be used by Agency only for the purposes of carrying out the provisions of this Agreement.

 (Agreement, § 3.)

44.     Pursuant to Section 4 of the Agreement, Cornoyer agreed that he  would not, at any time or in any manner, directly or indirectly, use Allstate Confidential Information for any purpose other than to carry out the provisions of the Agreement.  (Agreement, § 4.)

45.     Pursuant to Section 5 of the Agreement, Cornoyer acknowledged that all Confidential Information he was provided and had access to would at all times remain Allstate property and was to be returned to Allstate upon termination of his Agreement and relationship with Allstate. (Agreement, § 5.)

46.     Pursuant to Section 7 of the Agreement, Cornoyer agreed that, for a period of one year following termination of the Agreement, he would not solicit the purchase of products competitive with those sold by Allstate:

- With respect to any person, company, or organization to whom [EA Mace] or any person employed by [EA Mace], including [Cornoyer], sold insurance or other products or services on behalf of [Allstate] and who is a customer of [Allstate] at the time of termination of the Agreement;

- With respect to any person, company, or organization who is a customer of [Allstate] at the time of termination of this Agreement and whose identity was discovered as a result of [Cornoyer's] access to Confidential Information of [Allstate][1]; or

- From any office or business site located within one mile of his former [Allstate Agency location]. (Agreement, § 7(1-3).)

47.     Cornoyer recognized that a breach of any of the provisions in his Agreement would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure." (Agreement, § 10.)

48.     Accordingly, Cornoyer agreed that if he breached any of the duties and obligations he owed Allstate under the Agreement, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies. (*Id*.)

---

[1] The Allstate customers identified in paragraph 46 are collectively referred to as "Allstate customers."

23354109 v2

49.    Cornoyer also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement. (*Id*.)

### Cornoyer Breaches the LSP Agreement

50.    Cornoyer's Agreement and his relationship with EA Mace and Allstate terminated on February 24, 2023.

51.    By terminating the LSP Agreement on February 24, 2023, Cornoyer promised to, among other things: (a) immediately return all Allstate Confidential Information and property to Allstate; and (b) not solicit Allstate customers until after February 24, 2024. (Agreement, §§ 3, 4, 5 and 7.)

52.    He also agreed not to sell products that compete with Allstate products within one mile of his former Allstate Agency location until after February 24, 2024.

53.    After terminating the Agreement, however, Cornoyer began contacting and soliciting Allstate customers to leave Allstate and, instead, purchase products that compete with Allstate products from Cornoyer.

54.    More specifically, Cornoyer (a) called (and is calling) Allstate customers; (b) told them that he was with a new insurance agency, Defendant HIG; (c) told them that he is their "new Allstate Agent"; (d) solicited Allstate customers at their homes; (e) solicited the customers to leave Allstate and, instead, purchase products from HIG; (f) sent transfer paperwork to EA Mace and other Allstate Agents that falsely claims the customer has cancelled their Allstate policy; and (g) sent a targeted mailing solicitation to Allstate customers.

55.     Not surprisingly then, Allstate agencies in the local market have received several cancellation requests from Allstate customers that were formerly serviced by Cornoyer when he was affiliated with Allstate and/or EA Wyatt Mace.

56.     Just as important and disturbing, the large number of solicitations by Cornoyer indicates that Cornoyer kept Allstate Confidential Information after his relationship with Allstate and EA Mace terminated, and Cornoyer is now using Allstate Confidential Information to solicit Allstate customers.

57.     After learning that Cornoyer was soliciting Allstate customers, on or around August 16, 2023, Allstate sent correspondence to Cornoyer demanding that Cornoyer immediately cease soliciting Allstate customers and stop selling products that compete with Allstate. Allstate also demanded the immediate return of all Allstate Confidential Information and property. (A copy of the around August 16, 2023 letter is attached as **Exhibit C**.)

58.     Although Cornoyer's solicitation activities ceased after the August 16th letter, his solicitation activities have started again and he is actively solicitating Allstate customers and selling products that compete with Allstate products.

59.     Accordingly, Cornoyer refuses to honor the duties and obligations he owes Allstate under the LSP Agreement and the law by, among other things, continuing to use Allstate Confidential Information to solicit Allstate customers, continuing to solicit Allstate customers, and selling products that compete with Allstate on behalf of himself and Defendant HIG.

60.     As a consequence of Cornoyer's refusal to honor the duties and obligations he owes Allstate, Allstate continues to experience customer losses and the misuse of Allstate Confidential Information.

**McDaniel Enters into the RR Agreement to Solicit and Sell AFS Products**

61.    After proceeding through AFS's rigorous screening process to become a RR, McDaniel became an RR on or about July 12, 2005. (*See* RR Agreement, **Exhibit B**).

62.    As an RR, McDaniel solicited potential and existing Allstate and AFS customers to purchase AFS products, including variable life insurance policies, variable annuity contracts, mutual funds, and other securities products.

63.    As explained above, in consideration of McDaniel's access to existing and potential Allstate and AFS customers and Allstate Confidential Information, McDaniel, pursuant to the Agreement, agreed to protect Allstate Confidential Information and to abide by certain reasonable restrictive covenants.

64.    Pursuant to the Agreement, McDaniel acknowledged that all Confidential Information he was provided and had access to as an RR would at all times remain Allstate and AFS property and was to be returned to Allstate and/or AFS upon termination of the Agreement and his relationship with AFS. (Agreement, p. 4 ¶ j; p. 5 ¶ 1 (10); p. 7–8 ¶¶ a–e.)

65.    McDaniel also agreed that he would not directly or indirectly disclose Allstate Confidential Information to any third parties. (Agreement, p. 8 ¶¶ b, c.)

66.    McDaniel recognized that a breach of any of the provisions in the Agreement would "cause irreparable damage to [AFS's] business and that such damage will be difficult or impossible to measure." (Agreement, p. 8 ¶ f.)

67.    Accordingly, McDaniel agreed that if he breached any of the obligations under the Agreement, then AFS would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies. (*Id.*)

23354109 v2

68.    McDaniel also agreed that AFS would be "entitled to an award of reasonable attorneys' fees in the event that [AFS] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in the Agreement.  (*Id.*)

**McDaniel Illegally Retains and Uses Allstate Confidential Information**

69.    Pursuant to the Agreement, McDaniel agreed that after his relationship with AFS terminated, he would: (a) immediately return all Allstate Confidential Information to Allstate and/or AFS; (b) not disclose Allstate Confidential Information to third-parties, and (c) not use Allstate Confidential Information.  (Agreement, p. 4 ¶ j; p. 5 ¶ l (10); p. 8 ¶¶ b, c., p. 9–10 ¶ g.)

70.    McDaniel's Agreement and his relationship with AFS terminated on February 24, 2023.

71.    As a result, McDaniel was required to return all Allstate Confidential Information to AFS and/or Allstate by February 24, 2023.

72.    Naturally, he also is prohibited from using, possessing, or accessing Allstate Confidential Information after February 24, 2023.

73.    Similarly, McDaniel is prohibited from disclosing Allstate Confidential Information after February 24, 2023.

74.    After terminating, however, McDaniel joined Defendant HIG with Cornoyer, and began using Allstate Confidential Information to: (a) call Allstate customers; (b) tell customers that he was with a new insurance agency, Defendant HIG; (c) tell customers that he is their "new Allstate Agent"; (d) solicit Allstate customers at their homes; and (e) solicit the customers to leave Allstate and, instead, purchase products from HIG.

75.     He also sent transfer paperwork to EA Mace and other Allstate Agents, which falsely claims customers have cancelled their Allstate policies, and sent a targeted mailing solicitation to Allstate customers.

76.     Given the large amount of solicitations and upon information and belief, McDaniel likely exported or printed multiple Allstate customer lists (which are Allstate Confidential Information) before terminating his relationship with Allstate.

77.     Put another way, upon information and belief, McDaniel utilized (and is utilizing) Allstate Confidential Information, which he obtained through his position as an RR, to enable him to engage in these written and verbal solicitations on behalf of himself, Cornoyer, and HIG.

78.     Not surprisingly then, Allstate agencies in the local market have received several cancellation requests from Allstate customers that were formerly serviced by Allstate and/or EA Wyatt Mace.

79.     After learning that Defendants were soliciting Allstate customers, on or around August 16, 2023, Allstate sent correspondence to McDaniel demanding that McDaniel immediately cease soliciting Allstate customers and return all Allstate Confidential Information and property. (A copy of the around August 16, 2023 letter is attached as **Exhibit D**.)

80.     McDaniel's solicitation of Allstate customers initially ceased after August 16th. Unfortunately, McDaniel has restarted his solicitation activity and continues using Allstate Confidential Information in his solicitation of Allstate customers and selling of products that compete with Allstate products.

81.     Accordingly, McDaniel refuses to honor the duties and obligations he owes AFS and Allstate under the RR Agreement and the law by, among other things, continuing to use Allstate Confidential Information to solicit Allstate customers.

15


23354109 v2

82.     As a consequence of McDaniel's refusal to honor the duties and obligations he owes Allstate, Allstate continues to experience customer losses and the misuse of Allstate Confidential Information.

<b>Irreparable Harm to Allstate</b>

83.     Defendants are harming Allstate's legitimate business interests, including its goodwill and customer relationships, by soliciting Allstate customers and offering insurance products competitive with those offered by Allstate.

84.     Moreover, Cornoyer and McDaniel are still in possession of Allstate Confidential Information, and the only reason for McDaniel and Cornoyer to possess Allstate Confidential Information is to use Allstate Confidential Information on behalf of themselves and/or Defendant HIG.

85.     Consequently, it is both probable and imminent that an existing or prospective customer may purchase products from Defendants instead of from Allstate.

86.     It is also both probable and imminent that Allstate's Confidential Information is at significant risk and exposure.

87.     Injury to Allstate is therefore both probable and imminent because Defendants clearly intend to continue violating their Agreements and the law.

88.     Accordingly, Allstate is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

<b><u>COUNT I</u></b><br/><b>(Breach of LSP Agreement Against Cornoyer)</b>

89.     Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 88 of the Complaint, as if fully set forth herein.

90.     On September 2, 2021, Cornoyer entered into his LSP Agreement with Allstate.

16

91.     The LSP Agreement is a valid and enforceable contract.

92.     Under the LSP Agreement, Cornoyer promised, for a period of one year following the termination of the LSP Agreement, to not solicit the purchase of products competitive with those sold by Allstate to any Allstate customer.

93.     Under the LSP Agreement, Cornoyer promised, upon termination of the LSP Agreement, to immediately return all Allstate Confidential Information and property to Allstate.

94.     Under the LSP Agreement, Cornoyer further promised to not use Allstate Confidential Information for any purpose other than carrying out the provisions of the Agreement.

95.     The post-termination covenants found in the LSP Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

96.     Allstate has performed all of the duties and obligations it owes Cornoyer under the Agreement.

97.     Cornoyer breached the Agreement, and continues to breach the Agreement, by, among other things, soliciting the purchase of competing products to Allstate customers.

98.     Cornoyer also breached the Agreement, and continues to breach the Agreement, by, among other things, retaining and using Allstate Confidential Information.

99.     Allstate has incurred significant damage as a result of Cornoyer's breach of the Agreement.  Cornoyer's illegal solicitations and actions damaged and are continuing to damage Allstate's goodwill and customer relationships. Allstate's damages are in excess of $75,000.00.

100.    Moreover, Cornoyer's breaches of the LSP Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

101.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Cornoyer's breach of his Agreement in a manner that is not fully compensable by money damages.

102.    Allstate therefore requests that this Court grant injunctive relief against Cornoyer that prohibits Cornoyer from (a) soliciting Allstate customers; (b) soliciting the purchase of products that compete with Allstate until after February 23, 2024; and (c) using, accessing, or possessing Allstate Confidential Information.

103.    Allstate further requests that this Court order Cornoyer to immediately return all Allstate property in the custody, possession, or control of Cornoyer, including Allstate Confidential Information, to Allstate.

104.    Finally, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of Cornoyer's breaches of the Agreement.

**COUNT II**
**(Breach of RR Agreement Against McDaniel)**

105.    Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 88 of the Complaint, as if fully set forth herein.

106.    On July 12, 2005, McDaniel entered into his RR Agreement with AFS.

107.    The RR Agreement is a valid and enforceable contract and Allstate is a beneficiary of the RR Agreement.

108.    Under the RR Agreement, McDaniel acknowledged he would receive Allstate Confidential Information.

109.    Under the RR Agreement, McDaniel promised, upon termination of the Agreement, to immediately return all Allstate Confidential Information and property to AFS and/or Allstate.

110.    Under the RR Agreement, McDaniel further promised to not use Allstate Confidential Information for any purpose other than carrying out the provisions of the RR Agreement.

111.    Specifically, McDaniel promised not to disclose or grant third-parties access to Allstate Confidential Information.

112.    The post-termination covenants found in the RR Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

113.    Accordingly, Allstate benefits from the RR Agreement.

114.    McDaniel breached the RR Agreement, and continues to breach the RR Agreement, by, among other things, using Allstate Confidential Information to solicit the purchase of competing products to Allstate customers.

115.    McDaniel also breached the RR Agreement, and continues to breach the RR Agreement, by, among other things, retaining and using Allstate  Confidential Information.

116.    Allstate has incurred significant damage as a result of McDaniel's breach of the RR Agreement.  McDaniel's illegal retention of Confidential Information and actions damaged and are continuing to damage Allstate's goodwill and customer relationships. Allstate's damages are in excess of $75,000.00.

117.    Moreover, McDaniel's breaches of the RR Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and customer relationships.

23354109 v2

118.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by McDaniel's breach of the RR Agreement in a manner that is not fully compensable by money damages.

119.    Allstate therefore requests that this Court grant injunctive relief against McDaniel that prohibits McDaniel from using, accessing, or possessing Allstate Confidential Information, and orders McDaniel to immediately return all Allstate property in the custody, possession, or control of McDaniel, including Allstate Confidential Information, to Allstate.

<u>COUNT III</u>
**(Misappropriation of Trade Secrets – New Mexico Uniform Trade Secrets Act – Against All Defendants)**

120.    Allstate repeats and re-alleges each and every allegation contained in paragraphs 1 through 119 of the Complaint, as if fully set forth herein.

121.    During the course of their relationship with Allstate, Cornoyer and McDaniel were exposed to substantial amounts of Allstate Confidential Information.

122.    For instance, Cornoyer and McDaniel had access to Allstate customers' personal data, date of birth, social security numbers, types of products, amount of insurance, premium amounts, renewal dates, description and location of assets and property, claims histories, financial needs, pricing information, and other financial and personal information.

123.    Cornoyer and McDaniel retained Allstate Confidential Information so they could take that information to Allstate competitor HIG.

124.    The Confidential Information identified in paragraphs 35, 43 and 122 is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to maintain an advantage in the highly competitive insurance business.

20

125.    This information is considered a trade secret under the New Mexico Uniform Trade Secrets Act ("NMUTSA"),  NM Stat. § 57-3A-2 *et seq.*, because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

126.    The economic value of the Allstate trade secrets that Cornoyer and McDaniel had access to under the Agreement is over $500,000.

127.    Under the NMUTSA, "[a]ctual or threatened misappropriation [of trade secrets] may be enjoined."  NM Stat. § 57-3A-3.

128.    Cornoyer and McDaniel are misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate Confidential Information, and using that information to solicit Allstate customers.

129.    Cornoyer's and McDaniel's refusal to return Allstate property, including Allstate Confidential Information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

130.    Accordingly, Allstate requests that this Court enter an order enjoining Cornoyer, McDaniel, and HIG from using any Allstate Confidential Information, and enjoining Cornoyer and McDaniel from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

131.    Allstate also requests that this Court enter an order requiring Cornoyer and McDaniel to return any and all Allstate Confidential Information to Allstate, as they are required to do pursuant to the Agreement.

132.    In addition, Defendants' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

133.    Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

134.    Finally, Defendants' misappropriation of Allstate's trade secrets was willful and malicious.

135.    Allstate therefore also requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Defendants' willful and malicious misappropriation of Allstate trade secrets.

## <u>COUNT IV</u>
### (Violation of Federal Defend Trade Secrets Act Against All Defendants)

136.    Allstate repeats and realleges paragraphs 1 through 135 of the Complaint, as if fully set forth herein.

137.    During the course of his relationship with Allstate, Cornoyer and McDaniel were provided access to substantial amounts of Allstate Confidential Information, including the Confidential Information identified in paragraphs 35, 43 and 122.

138.    Allstate Confidential Information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

139.    Allstate Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate

invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continuously uses the information in its business.

140.    Cornoyer and McDaniel were under a contractual obligation to return Allstate Confidential Information to Allstate immediately upon termination of their Agreements.

141.    Cornoyer and McDaniel, however, ignored (and continue to ignore) their contractual obligations by maintaining possession of Allstate Confidential Information, using the Confidential Information to unfairly compete with Allstate, and passing the Confidential Information along to third parties who are not authorized to receive, possess, or access Allstate Confidential Information.

142.    Unless restrained, Defendants will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Allstate Confidential Information.

143.    Furthermore, actual or threatened misappropriation of Confidential Information may be enjoined under the DTSA.

144.    It is axiomatic that if Defendants are actively using Allstate Confidential Information, and Cornoyer and McDaniel are ignoring the terms of their Allstate Agreements, then Defendants have no intention of complying with the DTSA.

145.    Consequently, Defendants' actions constitute the actual and/or threatened misuse of Allstate Confidential Information.  Injunctive relief against Defendants is therefore appropriate.

146.    Naturally then, Allstate requests an order enjoining Defendants from using Allstate Confidential Information and enjoining Cornoyer and McDaniel from disclosing Allstate Confidential Information to anyone not authorized to receive the Confidential Information.

23354109 v2

147.    Allstate further requests an order requiring Cornoyer and McDaniel to return any and all Allstate Confidential Information to Allstate.

148.    Finally, Defendants' misappropriation of Allstate Confidential Information has been willful and malicious, and Allstate has incurred significant damages as a result of Defendants' misappropriation.

149.    Defendants' actions have also damaged Allstate's good will, reputation, and legitimate business interests.

150.    Allstate is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Defendants' wrongful misappropriation of Allstate Confidential Information.

**COUNT V**
**(Tortious Interference Against All Defendants)**

151.    Allstate repeats and realleges paragraphs 1 through 150 of the Complaint, as if fully set forth herein.

152.    Defendants were and are aware of the contractual relationships between Allstate and its customers, as well as Allstate's expectancy in developing relationships with potential customers.

153.    Defendants knew and understood that Allstate's contractual relationship with its customers would continue after Cornoyer's and McDaniel's Agreements terminated.

154.    Pursuant to their Agreements, Cornoyer and McDaniel were obligated not to solicit or otherwise interfere with Allstate's customer relationships for a period of one year after the termination of the Agreement.  They were further obligated not to use Allstate Confidential Information beyond their Agreements' terminations.

155.    Nevertheless, Cornoyer and McDaniel used Allstate Confidential Information and solicited Allstate customers after their Agreements terminated in order to have Allstate customers terminate their relationships with Allstate.  They did this for the benefit of themselves and HIG.

156.    Hence, Defendants knowingly, intentionally, willfully, and maliciously interfered with Allstate's customer relationships.

157.    Defendants' conduct was not privileged or justified.

158.    Allstate has incurred significant damages as a result of Defendants' interference with Allstate's contractual relationships.  Allstate has suffered the loss of customers and potential customers.  Defendants' actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

159.    As a direct and proximate result of Defendants' tortious interference, Allstate has been damaged in an amount to be determined at trial and is entitled to the recovery of punitive damages as well.

### COUNT VI
### (Replevin - NM Stat § 42-8-1 *et seq.* – Against All Defendants)

160.    Allstate repeats and realleges paragraphs 1 through 159 of the Complaint, as if fully set forth herein.

161.    All acts complained of herein occurred within San Juan County, New Mexico.

162.    Allstate owns certain property, including the Confidential Information identified in paragraphs 35, 43, and 122.  At all times relevant herein, Allstate is and was entitled to possession of said property.

163.    Between February 24, 2023 and the present, Defendants wrongfully deprived Allstate of possession of the property, including the Confidential Information identified in paragraphs 35, 43 and 122, owned by Allstate.

25

164.    On or about August 16, 2023, Allstate made a demand on Defendants for the immediate return of that property.

165.    Despite Allstate's demand, Defendants refused, and continue to refuse, to return Allstate's property.

166.    Defendants have wrongfully deprived, and continue to wrongfully deprive, Allstate of possession of its property.  As a result of the wrongful detention of Allstate's property by Defendants, Allstate has suffered damages in an amount to be proved at trial

167.    Allstate is lawfully entitled to the possession of its property, including the Confidential Information identified in paragraphs 35, 43 and 122.

168.    This cause of action originated within one year.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1.    Enter a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Cornoyer, and his agents, representatives, associates, employees, and all those acting in concert or participation with him, from soliciting the purchase of products competitive to those offered by Allstate from any person he serviced or knew of through his relationship with Allstate;

2.    Enter a temporary restraining order, preliminary injunction, and permanent injunction restraining and enjoining Cornoyer and McDaniel, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using, accessing and/or possessing Allstate Confidential Information;

3.    Enter an order requiring Cornoyer and McDaniel to return all Allstate Confidential Information and property in their possession, custody, or control to Allstate;

4.      Enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

5.      Issue a Writ of Replevin issued against Defendants herein requiring them to return Allstate's property, including Allstate's Confidential Information;

6.      Order a complete accounting of all of Allstate's property, including its Confidential Information, in Defendants' possession;

7.      Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of the breaches of the LSP and RR Agreements and Defendants' tortious interference;

8.      Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Defendants' intentional, willful, and wanton violation of the Federal Defend Trade Secrets Act and New Mexico Uniform Trade Secrets Act;

9.      Award Allstate punitive damages resulting from Defendants' intentional, willful, and wanton violation of the Federal Defend Trade Secrets Act and New Mexico Uniform Trade Secrets Act;

10.     Award Allstate punitive damages resulting from Defendants' tortious interference with Allstate's contractual relationships with its customers; and

11.     Award Allstate such other relief as the Court may deem just and proper.

Dated:  December 21, 2023                    Respectfully submitted,


                                             */s/ J. Scott Humphrey*
                                             J. SCOTT HUMPHREY (No. 23-407)
                                             KATIE M. BURNETT (*Pro Hac Vice Forthcoming*)
                                             **Benesch, Friedlander, Coplan & Aronoff LLP**
                                             71 South Wacker Drive, Suite 1600
                                             Chicago, Illinois 60606-4637

Telephone:  312.212.4949
Facsimile:  312.767.9192
Email: shumphrey@beneschlaw.com
            kburnett@beneschlaw.com

*Attorneys for Plaintiff Allstate Insurance Company*

28

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Gerard Richards, on behalf of Plaintiff Allstate Insurance Company, verify under penalty of perjury that the foregoing statements in the Verified Amended Complaint are true and correct to the best of my knowledge, information and belief.


Gerard Richards NM SML

Dated:  December 15, 2023

## CERTIFICATE OF SERVICE

I certify that on this 21st day of December, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing, and attach same for service on the following:

Dennis McDaniel
7100 Dellwood Court
Farmington, NM 87402

Cody Cornoyer-
1607 E 31st Street
Farmington, NM 87401-2001

Hills Insurance Group
c/o Dennis McDaniel, Reg. Agent
2110 Sullivan Ave, #1
Farmington, NM 87401

_/s/ J. Scott Humphrey_____
J. Scott Humphrey

*One of the Attorneys for Plaintiff Allstate Insurance Company*

23354109 v2